| | | |
|---|---|---|
| **JEREMY C. NUNZ,** | ) | |
| ℅ DannLaw | ) | |
| 15000 Madison Avenue | ) | Case No. |
| Lakewood, OH 44107 | ) | |
| | ) | Judge |
| **Plaintiff**, | ) | Magistrate Judge |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | |
| **NAVY FEDERAL CREDIT UNION** | ) | **JURY TRIAL ENDORSED HEREON** |
| Attn: Dietrich Kuhlman, C.E.O. | ) | |
| 820 Follin Lane SE. | ) | |
| Vienna, VA 22180 | ) | |
| | ) | |
| **Defendant.** | ) | |

Plaintiff Jeremy C. Nunz ("Nunz" or "Plaintiff") and for his Complaint for Damages against Defendant Navy Federal Credit Union ("NFCU" or "Defendant") states as follows:

## INTRODUCTORY STATEMENT

1. This matter is an action of damages filed by Nunz for NFCU's pattern of misinformation and misconduct related to the making of the loan, unilaterally changing the terms of the loan, and withdrawing unauthorized amounts from Nunz's bank account which violate the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq*. and also state law including claims for conversion and unjust enrichment.

## JURISDICTION AND VENUE

2. Plaintiff Jeremy C. Nunz is a natural person who resides in Roane County, Tennessee and is a "consumer" as that term is defined by 15 U.S.C. § 1602(i).

3. Defendant Navy Federal Credit Union is a federally chartered credit union headquartered in Viennes, VA.[1]

4. NFCU is a "creditor" as that term is defined by 15 U.S.C. § 1602(i).

5. Jurisdiction of this Court arises under 28 U.S.C. § 1331 as this action arises under the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq*.

6. The Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

7. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL ALLEGATIONS

8. On or about May 11, 2023, Plaintiff entered into a loan with Defendant by signing a ePromissory Note, Security Agreement, and Disclosure form to borrow $35,000.00 at 10.5% interest for a 180 month term with a payment of $390.10 per month for the express purpose of purchasing a travel trailer, specifically a 2020 Jayco eagle HT M 280RSOK (the "Trailer"). A copy of the ePromissory Note, Security Agreement, and Disclosure form is attached hereto as **Exhibit 1.**

9. Exhibit 1 required Plaintiff to deliver to NFCU the title to the Trailer listing NFCU as lienholder.

10. Exhibit 1 further stated that the failure to deliver the certificate of title or otherwise reflect NFCU's lien **could** result in NFCU converting the loan's annual percentage rate to Navy Federal's prevailing unsecured personal loan rate. See Exhibit 1 (emphasis added).

---

[1] Defendant is the largest credit union in the United States with more than 13.2 million customers and at least 350 branches worldwide. See *https://www.marketwatch.com/guides/banking/biggest-credit-unions/* (last visited June 23, 2024).

2

11. Following the purchase of the Trailer, in order to obtain instructions on perfecting NFCU's lien upon the Trailer, Plaintiff spoke with a representative from NFCU via telephone whom informed him to sign the back of the title, list NFCU as the lienholder and to mail the title to Navy Federal Credit Union, Collateral Control Dept., 5550 Heritage Oaks Drive, Pensacola, FL 32526. Plaintiff did exactly this.

12. This act triggered a revolving and recurring situation in which NFCU would send a letter stating that they received the title and that Plaintiff needed to fill out an additional form from the Tennessee Department of Revenue and send that to the same address, which Plaintiff complied, only then to be sent back the Trailer title stating that he was not the registered owner or there was writing on the title.

13. After having had the title to the vehicle returned to him, on or about January 16, 2024, Defendant sent a letter to Plaintiff stating that they had received the title and that he needed to fill out the form from the Tennessee Department of Revenue which he did. A copy of the January 16, 2024 letter, is attached hereto as **<u>Exhibit 2.</u>**

14. Exhibit 2 also stated that "Your loan rate was originally established as a secured or collateralized loan rate. However, if we do not receive the requested documents within 60 days from the date of this letter, your loan's Annual Percentage Rate may be converted to our prevailing unsecured personal loan rate, which may result in an increase to your monthly payment. If you have already resolved this matter with Navy Federal, you may disregard this letter." See Exhibit 2.

15. Plaintiff assumed that NFCU had what they needed after complying with their instructions and thought nothing further of the matter until he received an email dated March 27, 2024 stating that because they had not received the title the APR for the loan was changed to

3

16.35% and the payment would increase to $523.18 beginning May 9, 2024. A copy of the March 27, 2024 email is attached hereto as **Exhibit 3.**

16. Exhibit 3 further stated that "*If you want to return to your original APR and payment, AND have any additional interest you paid at the higher rate applied as a credit to your loan balance:*

- Take your title, which will be mailed to you separately, to the DMV as soon as possible!
- If we receive your lien-recorded title **within 90 days** from the date of this letter, your loan will be backdated and returned to the original APR and payment. We'll apply a credit to your loan for any additional interest paid at the higher rate.
- If we receive the lien-recorded title **after 90 days** from the date of this letter, the APR will be returned to the original rate on the date we receive it, but any additional interest paid at the higher rate won't be credited.

*See* Exhibit 3 (emphasis in the original).

17. Plaintiff was never told in advance what the interest would be or how it is determined or given the opportunity to refinance or otherwise satisfy the loan obligation.

18. Plaintiff contacted NFCU on April 20, 2024 regarding another loan as he had done previously over the years and was informed that it needed the title to the Trailer sent to them again.

19. Plaintiff contacted NFCU on May 15, 2024 to again ask about sending the title and returning the interest rate to the previously agreed rate, and requesting a postage paid self-addressed envelope which he received on May 31, 2024 and immediately mailed the title the same day.

4

20. On or about June 9, 2024, Defendant sent a letter to Plaintiff stating that they had received the title and that he needed to fill out the form from the Tennessee Department of Revenue which he had previously completed and set to NFCU on or about January 16, 2024 (See ¶ 11 *supra*). A copy of the June 9, 2024 letter, is attached hereto as **Exhibit 4.**

21. On or about June 11, 2024, Defendant sent a letter to Plaintiff stating that "We have received the title for the above-referenced collateral; however, you are not reflected as a registered owner or there is writing on the title." The letter further stated that "to transfer ownership into your name and record Navy Federal as lien holder on the title, please take the title, included in this package, to the titling state's Department of Motor Vehicles (DMV), or its equivalent in your state." However, the letter was silent as to what the specific issue was or what Plaintiff needed to do at the DMV. A copy of the June 11, 2024 letter, is attached hereto as **Exhibit 5.**

22. On or about May 17, 2024 and June 17, 2024 Defendant, without authorization withdrew $523.18 from the Plaintiff's check account to apply to the now unsecured loan despite Plaintiff's continual attempts to follow Navy Federal's directions with respect to the Trailer title and the Tennessee Department of Revenue forms.

23. Since entering into the loan with NFCU and receiving conflicting information, including incorrect instructions concerning the title to the Trailer in addition to having the funds withdrawn from Mr. Nunz checking account, he has experienced anxiety, frustration, and anger.

**COUNT I**
**Violation of the Truth in Lending Act (TILA) 15 U.S.C. §§ 1601 *et seq.***

24. Plaintiff realleges paragraphs 1-23 as if set forth at length herein.

25. Plaintiff's purchase of the Trailer was a consumer credit sale, as defined by the Federal Truth in Lending Act (TILA), 15 U.S.C. § 1602(h), and Regulation Z, 12 C.F.R. § 226.2(a)(16).

26. At all times relevant, the Defendant was a "creditor" within the meaning of TILA, 15 U.S.C. § 1602(g), and Regulation Z, 12 C.F.R. § 226(17).

27. At all times relevant, Plaintiff was a "consumer" within the meaning of TILA, 15 U.S.C. § 1602(i), and Regulation Z, 12 C.F.R. § 226(11).

28. TILA requires that certain information in a consumer credit sale "be disclosed clearly and conspicuously, in accordance with regulations of the Bureau." Additionally, "[t]he terms "annual percentage rate" and "finance charge" shall be disclosed more conspicuously than other terms, data, or information provided in connection with a transaction." 15 U.S.C. § 1632(a).

29. The ePromissory Note, Security Agreement, and Disclosure form (Exhibit 1) failed to:

   a. Disclose the finance charge, using that term, and a brief description, contrary to 15 U.S.C. § 1638(a)(3) and 12 C.F.R. § 226.18(d) if the loan was converted to an unsecured loan and when it was actually converted;

   b. Defendant failed to disclose the finance charge as an annual percentage rate (APR), using that term, and a brief description, contrary to 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e) if the loan was converted to an unsecured loan and when it was actually converted;

   c. Defendant failed to disclose the sum of the amount financed and the finance charge as the total of payments, using that term, and a descriptive explanation, contrary to

15 U.S.C. § 1638(a)(5) and 12 C.F.R. § 226.18(h) if the loan was converted to an unsecured loan and when it was actually converted;

    d.  Defendant failed to disclose the applicable annual percentage rate (APR) as required by 15 U.S.C. § 1638, Regulation Z § 226.18(32), and 12 C.F.R. § 226.22;

30. Defendant failed to make the disclosures required by TILA before the credit was extended, contrary to 15 U.S.C. § 1638(b) and 12 C.F.R. § 226.18(b).

31. Defendant failed to make the disclosures concerning the unsecured loan required by TILA in a clear and conspicuous manner, in which the terms "finance charge" and "annual percentage rate" together with the corresponding amount or percentage rate are more conspicuous than any other disclosure, contrary to 12 C.F.R. § 226.17(a).

32. Plaintiff has been damaged by Defendant's violations of TILA.

33. Defendant is liable to Plaintiff for actual damages and statutory damages of twice the finance charge plus actual damages pursuant to TILA at 15 U.S.C. § 1640(a)(2)(A)(i).

## COUNT II
## Unjust Enrichment

34. Plaintiffs re-alleges paragraphs 1–33 as if fully set forth herein.

35. Defendant benefited from receiving Plaintiff's funds in his checking account when it, without authorization, withdrew the funds and applied them to the now unsecured loan.

36. Plaintiff conferred a benefit upon Defendant by paying a unilaterally determined higher interest rate than that contracted for and without the disclosures required as set forth in Count I.

37. Defendant should not be permitted to retain money rightfully belonging to Plaintiff because Defendant failed to provide reasonable direction to the Plaintiff to ensure its lien was perfected and without disclosure of the unilaterally imposed interest rate when the

7

Defendant convert the Trailer loan to an unsecured personal loan.

38. Defendant accepted and wrongfully retained these benefits to the detriment of Plaintiff.

39. Defendant's enrichment at the expense of Plaintiff is and was unjust.

40. As a result of Defendant's wrongful conduct, as alleged above, Plaintiff seeks restitution of the funds taken by Defendant.

## COUNT III
### Conversion

41. Plaintiffs re-alleges paragraphs 1–33 as if fully set forth herein.

42. The Loan was and is a contract between Plaintiff and Defendant at all relevant times to this Complaint.

43. Based on the allegations, *supra*, and the Exhibits attached hereto, at all times relevant to this Complaint, Defendant had no lawful right to convert the loan to an unsecured loan with no explanation of the interest rate and to withdraw payments from Plaintiff's checking account in an amount higher than the agreed contract.

44. Defendant's conversion of Plaintiff's funds has caused and continues to cause him to suffer the loss of personal property, specifically at least $1,046.36 as well as having to retain counsel to remedy this situation.

45. As a result of the conversion of funds by Defendant, Defendant is liable to Plaintiffs for actual damages as further described, supra, as well as an award, as applicable for compensatory damages and punitive damages.

## COUNT IV
### Breach of Contract

46. Plaintiffs re-alleges paragraphs 1–45 as if fully set forth herein.

47. The Loan was and is a contract between Plaintiff and Defendant at all relevant times to this Complaint.

48. Based on the allegations above, *supra*, as of the filing of the Complaint, Plaintiff had complied or attempted to comply with all terms of the Contract and if failure if any to comply was the fault of the Defendant.

49. The ePromissory Note Exhibit 1 states "Failure to comply with this request can result in Navy Federal converting this loan's annual percentage rate to Navy Federal's prevailing unsecured personal loan rate . . .." *See* Exhibit 1.

50. Upon information and belief Defendant did not convert the loan to its prevailing unsecured personal loan rate but rather a rate based on the prevailing rate in addition to credit scores and credit history.

51. NFCU has breached the contract. This breach is one of bad faith as demonstrated by the allegations above, *supra*. NFCU has failed to exercise good faith in assisting Plaintiff recording NFCU lien upon the title pledged as security for the Loan and has improperly converted the loan to an unsecured loan at a self-determined rate of interest.

52. NFCU has breached the Contract and is liable to Plaintiff for actual damages of at least $1,046.36 and in a total amount to be determined at trial.

## TRIAL BY JURY

53. Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed.R.Civ.P. 38.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jeremy C. Nunz respectfully requests that judgment be entered against the Defendant Navy Federal Credit Union and this Court issue the following:

A. For an award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1640(a)(1) for the allegations contained in Count I;

B. For an award of statutory damages in an amount to be determined pursuant to 15 U.S.C. § 1640(a)(2)(A)(i) for the allegations contained in Count I;

C. For an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1640(a)(3) for the allegations contained in Count I;

D. For an award of all actual, nominal, statutory, compensatory, consequential, incidental, enhanced, and punitive damages as well as restitution and disgorgement as allowed by law or equity with respect to Counts II, III, and/or IV; and

E. For such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Brent S. Snyder
Brent S. Snyder, BPR #021700
DannLaw
*Of Counsel*
2125 Middlebrook Pike
Knoxville, TN 37921
(865) 264-3328
(865) 546-2777 facsimile
notices@dannlaw.com

Brian D Flick (0081605)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiff*